UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

NEHEMIAH WILLIAM FORD,

        Petitioner,

v.                                         Case No. 3:13-cv-430-J-34MCR

SECRETARY, FLORIDA
DEPARTMENT OF CORRECTIONS,
et al.,

        Respondents.

_____

## ORDER

### I. Status

        Petitioner Nehemiah William Ford, an inmate of the Florida penal system, initiated

this action by filing a pro se Petition for Writ of Habeas Corpus (Petition, Doc. 1) under 28

U.S.C. § 2254. In the Petition, Ford challenges a 2008 state court (Duval County, Florida)

judgment of conviction for sale or delivery of cocaine. Respondents have submitted a

memorandum in opposition to the Petition. See Respondents' Response to Petition for

Writ of Habeas Corpus (Response, Doc. 14) with exhibits (Resp. Ex.).  Ford submitted a

brief in reply (Reply, Doc. 17). This case is ripe for review.

### II. Procedural History

        On April 3, 2008, in Case No. 2008-CF-3307, the State of Florida charged Ford

with sale or delivery of cocaine.  Resp. Ex. A, Information. On April 10, 2008, the State

filed notice of intent to classify Ford as a habitual felony offender pursuant to Florida

Statute section 775.084 and increase his sentence to thirty years imprisonment.  Resp.

Ex. A, Notice of Intent.  Ford proceeded to trial on July 15, 2008, at the conclusion of

which, the jury found him guilty.  Resp. Ex. B, Transcript of Trial (Trial Tr.).  On July 18, 2008, Ford's trial counsel filed a Motion for a New Trial, raising seven grounds of error. Resp. Ex. A, Motion for New Trial.  The trial court denied the Motion for a New Trial and on August 14, 2008, found Ford to be a habitual felony offender and sentenced him to thirty years imprisonment. Resp. Ex. A, Judgment; Transcript of Sentencing (Sent. Tr.) at 4, 28.

With the benefit of counsel, on January 23, 2009, Ford filed a motion to correct illegal sentence pursuant to Florida Rule of Criminal Procedure 3.800(b)(2).  Resp. Ex. C, Motion to Correct.  In the Motion, Ford asserted that the habitual felony offender statute violated the Fifth, Sixth and Fourteenth Amendments to the United States Constitution. Id. at 2.  Acknowledging that precedent foreclosed his argument, he preserved the argument for further review.  Id. at 3.  On January 27, 2009, the trial court denied the motion.  Resp. Ex. C, Order Denying Motion to Correct Illegal Sentence.

On August 29, 2008, Ford appealed his conviction.  Resp. Ex. A, Notice of Appeal. With the benefit of counsel, Ford filed an initial brief in which he repeated his argument that the habitual felony offender statute was unconstitutional.  Resp. Ex. F, Initial Brief. The State filed an answer brief, noting that Ford had conceded that precedent foreclosed his argument. Resp. Ex. G, Answer Brief.  On December 16, 2009, the appellate court affirmed Ford's conviction and sentence per curiam without issuing a written opinion. Ford v. State, 23 So. 3d 714 (Fla. 1st DCA 2009); Resp. Ex. H, Opinion.  The mandate issued on January 4, 2010.  Resp. Ex. H, Mandate.

Pursuant to Florida Rule of Appellate Procedure 9.141(c)(2) (2010), Ford filed a pro se petition alleging ineffective assistance of appellate counsel in the First District

Court of Appeal on July 28, 2010.  Resp. Ex. I, Petition Alleging Ineffective Assistance of Appellate Counsel.  Ford alleged that appellate counsel was ineffective for failing to raise errors that his trial counsel had preserved for appeal.  Id.  The appellate court denied the petition per curiam on August 25, 2010.  Ford v. State, 48 So. 3d 70 (Fla. 1st DCA 2010); Resp. Ex. J, Opinion. Ford moved for rehearing or clarification on September 8, 2010, and elaborated on the claims he believed should have been raised on appeal.  Resp. Ex. K, Motion for Rehearing/Clarification.  The court summarily denied rehearing/clarification on October 20, 2010.  Resp. Ex. K, Order.

On November 20, 2010, Ford filed a pro se motion for postconviction relief pursuant to Florida Rule of Criminal Procedure 3.850. Resp. Ex. L, Motion for Postconviction Relief. In his request for postconviction relief, Ford asserted in separate grounds that he was illegally and vindictively sentenced.  Id.  On July 2, 2012, the trial court issued a written opinion denying relief.  Resp. Ex. L, Order.  Ford appealed (Resp. Exs. L, M), but the State did not file an answer brief (Resp. Ex. N).  On November 9, 2012, the appellate court affirmed the denial per curiam without issuing a written opinion, see Ford v. State, 103 So. 3d 147 (Fla. 1st DCA 2012); Resp. Ex. O.  Ford filed a motion for rehearing, which the court summarily denied.  Resp. Ex. P.  The mandate issued on January 8, 2013.  Resp. Ex. Q.

### III. One-Year Limitations Period

The Petition appears to be timely filed within the one-year limitations period.  See 28 U.S.C. § 2244(d); Response at 2.

## IV. Evidentiary Hearing

"In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." Schriro v. Landrigan, 550 U.S. 465, 474 (2007) (citation omitted). "It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." Id. The pertinent facts of this case are fully developed in the record before the Court. Because this Court can "adequately assess [Petitioner's] claim[s] without further factual development," Turner v. Crosby, 339 F.3d 1247, 1275 (11th Cir. 2003), an evidentiary hearing will not be conducted.

## V. Standard of Review

The Court will analyze Ford's claims under 28 U.S.C. § 2254(d), as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). Section 2254(d) states:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Thus, 28 U.S.C. § 2254(d) "bars relitigation of any claim 'adjudicated on the merits' in state court, subject only to the exceptions in §§ 2254(d)(1) and (d)(2)." Harrington v. Richter, 562 U.S. 86, 98 (2011). As the United States Supreme Court stated, "AEDPA erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court." Burt v. Titlow, 134 S.Ct. 10, 16 (2013). This standard of review is described as follows:

> Under AEDPA, when the state court has adjudicated the petitioner's claim on the merits, a federal court may not grant habeas relief unless the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," id. § 2254(d)(2). "Under § 2254(d)(1)'s 'contrary to' clause, we grant relief only 'if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts.'" Jones v. GDCP Warden, 753 F.3d 1171, 1182 (11th Cir. 2014) (quoting Williams v. Taylor, 529 U.S. 362, 413, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000)). "Under § 2254(d)(1)'s 'unreasonable application' clause, we grant relief only 'if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.'" Id. (quoting Williams, 529 U.S. at 413, 120 S.Ct. 1495).
>
> For § 2254(d), clearly established federal law includes only the holdings of the Supreme Court – not Supreme Court dicta, nor the opinions of this Court. White v. Woodall,- U.S. -, 134 S.Ct. 1697, 1702, 188 L.Ed.2d 698 (2014). To clear the § 2254(d) hurdle, "a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Harrington v. Richter, 562 U.S. 86, 131 S.Ct. 770, 786-87, 178 L.Ed.2d 624 (2011). "[A]n 'unreasonable application of' [Supreme Court] holdings must be 'objectively unreasonable,' not merely wrong; even

5

'clear error' will not suffice." Woodall, 134 S.Ct. at 1702 (quoting Lockyer v. Andrade, 538 U.S. 63, 75-76, 123 S.Ct. 1166, 155 L.Ed.2d 144 (2003)). A state court need not cite or even be aware of Supreme Court cases "so long as neither the reasoning nor the result of the state-court decision contradicts them." Early v. Packer, 537 U.S. 3, 8, 123 S.Ct. 362, 154 L.Ed.2d 263 (2002); accord Richter, 131 S.Ct. at 784.

"AEDPA thus imposes a highly deferential standard for evaluating state-court rulings and demands that state-court decisions be given the benefit of the doubt." Renico v. Lett, 559 U.S. 766, 773, 130 S.Ct. 1855, 176 L.Ed.2d 678 (2010) (citations and internal quotation marks omitted). And when a claim implicates both AEDPA and Strickland, our review is doubly deferential. Richter, 131 S.Ct. at 788 ("The standards created by Strickland and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so." (citations and internal quotation marks omitted)). [A petitioner] must establish that no fairminded jurist would have reached the Florida court's conclusion. See Richter, 131 S.Ct. at 786-87; Holsey v. Warden, Ga. Diagnostic Prison, 694 F.3d 1230, 1257-58 (11th Cir. 2012). "If this standard is difficult to meet, that is because it was meant to be." Richter, 131 S.Ct. at 786....

Taylor v. Sec'y, Fla. Dep't of Corr., 760 F.3d 1284, 1293-94 (11th Cir. 2014), cert. denied, 135 S.Ct. 2323 (2015); see also Hittson v. GDCP Warden, 759 F.3d 1210, 1230 (11th Cir. 2014), cert. denied, 135 S.Ct. 2126 (2015).

For a state court's resolution of a claim to be an adjudication on the merits, so that the state court's determination will be entitled to deference for purposes of federal habeas corpus review under AEDPA, all that is required is a rejection of the claim on the merits, not an opinion that explains the state court's rationale for such a ruling. Richter, 562 U.S. at 100 (holding and reconfirming that "§ 2254(d) does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits'"); Wright v. Sec'y for the Dep't of Corr., 278 F.3d 1245, 1255 (11th Cir. 2002). Thus, to the

extent that Ford's claims were adjudicated on the merits in the state courts, they must be evaluated under § 2254(d).

## VI. Ineffective Assistance of Counsel

"The Sixth Amendment guarantees criminal defendants effective assistance of counsel. That right is denied when a defense counsel's performance falls below an objective standard of reasonableness and thereby prejudices the defense." Yarborough v. Gentry, 540 U.S. 1, 5  (2003) (per curiam) (citing Wiggins v. Smith, 539 U.S. 510, 521 (2003), and Strickland v. Washington, 466 U.S. 668, 687 (1984)).

> To establish deficient performance, a person challenging a conviction must show that "counsel's representation fell below an objective standard of reasonableness." [Strickland,] 466 U.S. at 688, 104 S.Ct. 2052.  A court considering a claim of ineffective assistance must apply a "strong presumption" that counsel's representation was within the "wide range" of reasonable professional assistance. Id., at 689, 104 S.Ct. 2052. The challenger's burden is to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id., at 687, 104 S.Ct. 2052.
>
> With respect to prejudice, a challenger must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id., at 694, 104 S.Ct. 2052.  It is not enough "to show that the errors had some conceivable effect on the outcome of the proceeding." Id., at 693, 104 S.Ct. 2052. Counsel's errors must be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Id., at 687, 104 S.Ct. 2052.

Richter, 562 U.S. at 104. The Eleventh Circuit has recognized "the absence of any iron-clad rule requiring a court to tackle one prong of the Strickland test before the other." Ward v. Hall, 592 F.3d at 1144, 1163 (11th Cir. 2010).  Since both prongs of the two-part Strickland test must be satisfied to show a Sixth Amendment violation, "a court need not

7

address the performance prong if the petitioner cannot meet the prejudice prong, and vice-versa." Id. (citing Holladay v. Haley, 209 F.3d 1243, 1248 (11th Cir. 2000)). As stated in Strickland: "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." 466 U.S. at 697.

A state court's adjudication of an ineffectiveness claim is accorded great deference.

> "[T]he standard for judging counsel's representation is a most deferential one." Richter, - U.S. at -, 131 S.Ct. at 788. But "[e]stablishing that a state court's application of Strickland was unreasonable under § 2254(d) is all the more difficult. The standards created by Strickland and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so." Id. (citations and quotation marks omitted). "The question is not whether a federal court believes the state court's determination under the Strickland standard was incorrect but whether that determination was unreasonable - a substantially higher threshold." Knowles v. Mirzayance, 556 U.S. 111, 123, 129 S.Ct. 1411, 1420, 173 L.Ed.2d 251 (2009) (quotation marks omitted). If there is "any reasonable argument that counsel satisfied Strickland's deferential standard," then a federal court may not disturb a state-court decision denying the claim. Richter, - U.S. at -, 131 S.Ct. at 788.

Hittson, 759 F.3d at 1248; Knowles v. Mirzayance, 556 U.S. 111, 123 (2009). "In addition to the deference to counsel's performance mandated by Strickland, the AEDPA adds another layer of deference--this one to a state court's decision--when we are considering whether to grant federal habeas relief from a state court's decision." Rutherford v. Crosby, 385 F.3d 1300, 1309 (11th Cir. 2004).  As such, "[s]urmounting Strickland's high bar is never an easy task." Padilla v. Kentucky, 559 U.S. 356, 371 (2010).

## VII. Findings of Fact and Conclusions of Law

### A. Grounds One and Two

As grounds one and two, Ford asserts that appellate counsel (Assistant Public Defender M. Gene Stephens) was ineffective because he failed to file sufficient claims on direct appeal and failed to raise the grounds that trial counsel had preserved by objections.[1]  See Petition at 5-7.  Grounds one and two are duplicative in substance, and in his Reply, even Ford collapses them into one ground.  See id.; Reply at 1-3.  Discerning no substantial difference between ground one and ground two, the Court will also address them together.

Ford filed a petition under Florida Rule of Appellate Procedure 9.141(c)(2) (2010) alleging ineffective assistance of appellate counsel.  Resp. Ex. I.  In the petition, Ford complained that appellate counsel failed to raise claims that trial counsel had preserved for appeal.  Instead, appellate counsel raised only one claim that was foreclosed by precedent and raised that only to preserve for further review.  He further asserted that the outcome of the appeal would have been different had the preserved claims been raised.  Thus, Ford raises the same ineffectiveness claim in his federal petition that he raised in his Rule 9.141(c)(2) petition in the state appellate court.

Although Ford did not specifically identify the grounds he claims should have been raised on appeal, he cited pages forty-five and forty-six of volume one of the transcript of the proceeding on August 14, 2008.  Id.  Respondents suggest and the Court agrees that Ford intended to refer to the written Motion for a New Trial, which is found at pages forty-

---

[1] Petitioner describes the grounds appellate counsel failed to raise as grounds "reserved and objected for direct appeal."  See Petition at 5, 7.

five and forty-six in volume I of the record on direct appeal to the First District Court of Appeal and which the trial court denied at Ford's sentencing hearing on August 14, 2008. See Resp. Ex. A, Motion for New Trial.[2]

Ford raised seven grounds in his Motion for New Trial. Id.   As grounds one and two, he asserted that the court erred by not granting Ford's motions for judgment of acquittal made at the close of the State's case (Resp. Ex. B, Trial Tr. at 134) and at the close of all the evidence (Resp. Ex. B, Trial Tr. at 146).   As grounds three and four, he asserted that the verdict was contrary to the weight of the evidence and the law.   As ground five, Ford asserted that the court erred in not granting his first motion in limine, thereby allowing the jury to hear overly prejudicial evidence (see Resp. Ex. A, Motion in Limine, Order).   As ground six, he asserted that the court erred in failing to sustain his objection in closing argument relating to the state arguing facts that were not in evidence (see Trial Tr. at 162-63).   And as ground seven, Ford asserted that the court erred in failing to grant his request for the third element in the jury instructions, as the defense had requested an instruction that "Mr. Ford had knowledge of the presence of the substance" (see Trial Tr. at 167-72).   Id.

The appellate court issued a per curiam denial of Ford's Rule 9.141(c)(2) petition, citing Pope v. Wainwright, 496 So. 2d 798 (Fla. 1986).   Resp. Ex. J.   Pope stands for the proposition that appellate counsel is not ineffective for failing to raise meritless issues on appeal.   Id. at 805.   In Pope, the petitioner contended that his appellate counsel was ineffective for failing to raise a number of "crucial and dispositive points" on appeal, and

---

[2] In his motion for rehearing or clarification, Ford elaborated on the grounds he asserts should have been raised on appeal.   Resp. Ex. K, Motion for Rehearing/Clarification.

asked the postconviction court to consider such issues on the merits.  Id. at 800.  The Florida Supreme Court explained that a habeas corpus petition alleging ineffective assistance of appellate counsel could not serve as a belated direct appeal.  Rather, the postconviction court is limited to an analysis of deficient performance and prejudice.  Id. The court in Pope concluded that appellate counsel was not seriously deficient for failing to raise issues on direct appeal that were procedurally barred and nonfundamental.  Id. at 805.  By its express reliance on Pope, the state appellate court denied Ford's motion for postconviction relief on the merits.  Thus, the state court's adjudication of this claim is entitled to deference under AEDPA.

### 1. Ineffective Assistance of Appellate Counsel

The Strickland standard governs claims alleging ineffective assistance of appellate counsel.  See Smith v. Robbins, 528 U.S. 259, 285-86 (2000); see also Rambaran v. Sec'y, Dep't of Corr., 821 F.3d 1325, 1331  (11th Cir. 2016); Overstreet v. Warden, 811 F.3d 1283, 1287 (11th Cir. 2016); Philmore v. McNeil, 575 F.3d 1251, 1264 (11th Cir. 2009).  "An attorney is not required under the Constitution or the Strickland standards to raise every non-frivolous issue on appeal."  Brown v. United States, 720 F.3d 1316, 1335 (11th Cir. 2013) (citing Jones v. Barnes, 463 U.S. 745, 754 (1983)).  "[A]n effective attorney will weed out weaker arguments, even though they may have merit."  Philmore, 575 F.3d at 1264; see also Overstreet, 811 F.3d at 1287.  Moreover, "any deficiencies of counsel in failing to raise or adequately pursue [meritless issues on appeal] cannot constitute ineffective assistance of counsel."  Owen v. Sec'y, Dep't of Corr., 568 F.3d 894, 915 (11th Cir. 2009).  Appellate counsel's performance is prejudicial only if "the neglected

claim would have a reasonable probability of success on appeal." Philmore, 575 F.3d at 1264-65.

### 2. **Application of 28 U.S.C. § 2254(d)**

After a review of the record and the applicable law, the Court concludes that the state appellate court's adjudication of this claim was neither contrary to nor an unreasonable application of Strickland. Also, the state court's adjudication was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Ford is not entitled to relief on the basis of this claim.

The state appellate court's decision that appellate counsel was not ineffective was based upon its assessment that the grounds he failed to raise were nonmeritorious. See Pope, 496 So. 2d at 805. Indeed, by relying on Pope to reject Ford's claims, the state appellate court has already answered the question of what would have happened on appeal had Ford's appellate counsel raised the issues preserved in the motion for new trial. Cf. Herring v. Sec'y, Dep't of Corr., 397 F.3d 1338, 1354-55 (11th Cir. 2005) ("The Florida Supreme Court already has told us how the issues would have been resolved under Florida state law had [counsel] done what [Petitioner] argues he should have done . . . ."). "It is a 'fundamental principle that state courts are the final arbiters of state law, and federal habeas courts should not second-guess them on such matters.'" Id. (quoting Agan v. Vaughn, 119 F.3d 1538, 1549 (11th Cir. 1997)). Accordingly, because the state appellate court has already decided that the grounds were not meritorious, appellate counsel cannot be deficient for failing to raise them, and prejudice does not result from their omission. See Philmore, 575 F.3d at 1264-65. Ford cannot establish that the state

appellate court unreasonably applied <u>Strickland</u> when it denied Ford's petition alleging ineffective assistance of appellate counsel.[3]

Even if the state court's adjudication of this claim was not entitled to deference, Ford's ineffectiveness claim is without merit. Ford has failed to show that appellate counsel's failure to raise the claims preserved in the motion for new trial was deficient performance. Even assuming arguendo deficient performance by appellate counsel, Ford has not shown resulting prejudice. Given the record, he has not shown a reasonable probability exists that the claims would have been meritorious on direct appeal, if counsel had raised them. <u>See</u> <u>Philmore</u>, 575 F.3d at 1264-65. Accordingly, Ford's federal claim is meritless because he has neither shown deficient performance nor resulting prejudice. Ford is not entitled to federal habeas relief on this ineffectiveness claim.

## B. <u>Ground Three</u>

As ground three, Ford asserts that his sentence was unconstitutionally vindictive in violation of his rights to due process and trial. He further asserts that the court intended to punish him with a most severe penalty in retaliation for his exercise of his rights, and that the due process clause prohibits unexplained, longer sentences. <u>See</u> Petition at 8. In response to the State's argument that this claim is insufficiently pled to state a claim for relief, <u>see</u> Response at 7, Ford identifies specific comments made by the court during

---

[3] Of course, even though a federal court must defer to state courts on state-law matters such deference does not preclude habeas relief if the correct application of a state law violates a specific federal constitutional right or if the erroneous ruling of a state court "makes a petitioner's trial 'so fundamentally unfair that the conviction was obtained in violation of the due process clause of the fourteenth amendment.'" <u>Herring</u>, 397 F.3d at 1355 n.8 (quoting <u>Thigpen v. Thigpen</u>, 926 F.2d 1003, 1012 (11th Cir. 1991)). Neither of those circumstances are present in this case.

his sentencing hearing.  See Reply at 3-8.  Before pronouncing a sentence of thirty years,

the court articulated the following reasons:[4]

> THE COURT:  . . . Mr. Ford, I hear what your mom has to say about you, and I hear what Pastor Bivens has to say about you, and that they are both hopeful about you and believe that there still is a chance that you can be turned around.  And Pastor Bivens indicates that he sees in your attitude and demeanor a different person from what he saw the other times that you have been in trouble with the law.
>
> **But I have to tell you I just don't see that in your demeanor and in your behavior.**  You don't come before the Court saying I have done bad things but I have found my way to do the right thing now and I'd like to let you know I'm standing at the foot of the cross now.  Not that I always believe it when people tell me that because I hear it every day, so after a while you get rather cynical about it, but I try not to become cynical about things like that because miracles do happen.
>
> **However, in this case I don't even hear you saying the words that you are supposed to say to indicate that to a Court.  You come in complaining that the law library is closed on the day of your sentencing.  I'll be very frank with you.  I don't think if they had a $50 million law library in your cell where you could use the whole thing every day with nobody to bother you and nobody to get close but you, I don't think the outcome would have been a bit different.  In all of the books in the law library of this courthouse there is not a sentence or a paragraph that would have made that jury find you not guilty.  There is not a sentence or a paragraph that would cause me to suppress the evidence or to dismiss this case.  So I'm not sure what your point is about the law library other than just to have something to complain about.**
>
> **But I don't hear anything from you that makes me think that your attitude about life has changed.  You're a person that has been violating the law nonstop since you became an adult as far as I can see from looking at your record.   And I don't see anything that makes me optimistic that you would ever become rehabilitated no**

---

[4] For context, the Court has included the comments in their entirety.  For ease, the Court has used bold to identify the particular comments Ford claims were vindictive.

**matter how much counseling we could provide to you or how much mentoring your church could give you.  And it is for people like that the habitual felony offender law was written.**

Sent. Tr. at 26-28 (emphasis added).  Ford submits that his demeanor and behavior were appropriate and humble, and that the court improperly sentenced him more severely because he asserted his constitutional right to plead not guilty and demand a jury trial. He suggests that the court intended to punish him for asserting his right to access the law library.  He also disputes the court's finding that he had been in trouble nonstop, pointing out that he had only been in trouble four times, and asserts that his prior record had limited relevance.   Next, after assuming that the court referred to his race when referring to "people like that," Ford asserts that the court was improperly motivated to sentence him based on racial profiling.  Finally, he submits that the record did not support imposition of a harsher sentence given the small amount of drugs and the nonviolent nature of his offense.  See Reply at 3-8.

In ground two of his pro se Rule 3.850 motion in state court, Ford argued only that the court vindictively sentenced him for complaining about his efforts to help himself with legal work.[5]  See Resp. Ex. L, Motion for Postconviction Relief at 6.  Ford's claim lacked any allegation that the court vindictively sentenced him for asserting his right to trial instead of pleading guilty, as well as any references to a federal constitutional claim.[6]

---

[5] Ford's appellate counsel did not raise a claim of vindictive sentencing on direct appeal. See Resp. Ex. F.  Moreover, Ford did not assert in his Rule 9.141(c)(2) petition that appellate counsel's failure to raise a vindictive sentencing claim was ineffective.  See Resp. Ex. I.

[6] Ford, proceeding pro se, appears to have used a form that instructed him to tell his story briefly "without citing cases or law."  See Resp. Ex. L, Motion for Postconviction Relief at 6.

15

Regardless, Respondents assume that Ford raises the same vindictiveness claim in his federal petition as he did in his state petition. See Doc. 14 at 8.

The state postconviction court denied relief on Ford's claim of vindictive sentencing. Resp. Ex. L, Order at 2-5. The postconviction court explained that a "vindictive sentence is a harsher sentence imposed in retaliation for a defendant exercising his or her constitutional right to due process of law." Id. at 2. The postconviction court then applied Florida law, but also cited Alabama v. Smith, 490 U.S. 794, 799 (1989), and found that a presumption of vindictiveness did not arise after consideration of the totality of the circumstances, and that Ford had failed to show actual vindictiveness. Id. Thus, the postconviction court articulated the constitutional basis of Ford's claim and addressed the merits in a reasoned opinion. The state court's adjudication of this claim is entitled to deference under AEDPA.

### 1. Judicial Vindictiveness

Due process prevents a court from imposing an increased sentence after reconviction following a new trial if that increase is motivated by vindictiveness on the part of the sentencing judge. See Texas v. McCullough, 475 U.S. 134, 137 (1986) (discussing North Carolina v. Pearce, 395 U.S. 711, 723-25 (1969)); see also Alabama v. Smith, 490 U.S. 794, 798 (1989). "To punish a person because he has done what the law plainly allows him to do is a due process violation of the most basic sort." Bordenkircher v. Hayes, 434 U.S. 357, 363 (1978) (citing Pearce, 395 U.S. at 738). Under limited circumstances, a presumption of vindictiveness may arise; otherwise, a defendant must

prove actual vindictiveness.[7]  See Smith, 490 U.S. at 795, 799.  However, "when a greater penalty is imposed after trial than was imposed after a prior guilty plea, the increase in sentence is not more likely than not attributable to the vindictiveness of the sentencing judge."  Id. at 801.  Rather, the increased sentence is likely justified by other factors, including a fuller appreciation of the nature and extent of the crimes, as well as insight into the defendant's moral character and suitability for rehabilitation by observing defendant's conduct at trial.  Id.

### 2.  Application of 28 U.S.C. § 2254(d)

After a review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was neither contrary to, nor an unreasonable application of, clearly established federal law.  Nor was the state court adjudication based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.  Thus, Ford is not entitled to relief on the basis of this claim.

Unlike the defendants in Smith and Pearce, Ford was not resentenced after a successful appeal.  But even if the court applies the principles espoused in Smith and Pearce to the context of an initial sentencing, Ford cannot show a reasonable likelihood that the sentence imposed was attributable to a vindictive or retaliatory motive or actual vindictiveness by the court.[8]  Far from punishing Ford for exercising a constitutional right,

---

[7] Where there is a reasonable likelihood that the sentence imposed is attributable to a vindictive or retaliatory motive, a presumption of judicial vindictiveness may arise.  See Smith, 490 U.S. at 799.  However, no presumption arises where a defendant successfully appeals his sentence and receives a longer sentence after trial upon remand than he did after an initial guilty plea.  Id. at 795, 803.

[8] Florida courts extended the concept of judicial vindictiveness to the context of initial sentencings where the sentencing judge had been involved in plea offers or deals that the defendant had rejected.  See Wilson v. State, 845 So. 2d 142 (Fla. 2003); Baxter v. State, 127 So. 3d 726 (Fla. 1st DCA 2013).  To determine whether a presumption of

the sentencing court relied on Ford's recidivism and status as a habitual offender under state law.[9]   In addition, the court appropriately relied on its impressions of Ford's moral character and suitability for rehabilitation as demonstrated by Ford's complaints during allocution.   See United States v. Stanley, 739 F.3d 633, 652 (11th Cir. 2014) ("a judge may consider a defendant's freely offered allocution regarding remorse during sentencing").   In context, it is clear that the sentencing court's comments evince the justification for sentencing Ford to the maximum sentence rather than retaliation for his choice to exercise his right to go to trial.   See Smith, 490 U.S. at 798 ("sentencing discretion permits consideration of a wide range of information relevant to the assessment of punishment").   In reaching this conclusion, the Court rejects Ford's interpretation of the sentencing court's articulated reasons for sentencing him to thirty years.   Because Ford cannot demonstrate facts supporting either a presumption of or actual vindictiveness at his initial sentencing, the state postconviction court's decision was neither contrary to nor an unreasonable application of clearly established federal law, and the state postconviction court did not unreasonably determine the facts.[10]

---

vindictiveness applies, Florida courts apply a totality-of-the-circumstances test, which requires a court to consider factors such as the court's participation in plea negotiations, comments made by the court that indicate a departure from the role of neutral arbiter, the disparity between the plea offer and the sentence imposed, and a lack of facts in the record that explain the reasons for the increased sentence.  See Wilson, 845 So. 2d at 156.  Absent the presumption, a defendant must prove actual vindictiveness.  Id.

[9] Although Ford speculates that the court discriminated based on race when referring to "people like that," nothing in the record remotely supports his claim that the court was referring to Ford's race.  Rather, in context the court's comment about "people like that" appears to refer to habitual offenders and recidivists.

[10] Even if the state postconviction court's adjudication of the claim is not entitled to deference under AEDPA, Ford's vindictive sentencing claim would fail on the merits for the same reasons.

## C. <u>Ground Four</u>

As ground four, Ford asserts that he was sentenced illegally.  He claims that the jury must determine the quantity of the controlled substance from the evidence at trial after being informed that a greater minimum mandatory punishment attaches to certain quantities.  Although he never particularizes the claim to the facts of his case, he implies that he was sentenced illegally to an enhanced mandatory minimum based on a quantity of drugs determined by the judge, not the jury.  <u>See</u> Petition at 10.

In his Rule 3.850 petition in state court, Ford raised a claim of illegal sentencing. Resp. Ex. L, Motion for Postconviction Relief at 5-6.  He contended that he was charged with a subsection of the statute that required a drug quantity in excess of ten grams, but that the drug quantity in his case was only 0.2 grams.  He presented his claim exclusively as a state-law claim and alleged no federal constitutional claim.  <u>Id.</u>

The state postconviction court denied Ford's claim because his conviction and sentence were not illegal.  The court noted that Ford was mistaken about the statutory subsection under which he was convicted.  Ford based his argument on Florida Statute section 893.13(1)(b), which provides that it is a first degree felony if the drug quantity involved in the offense exceeds ten grams.  However, Ford was convicted of violating Florida Statute section 893.13(1)(a), which provides for a second degree felony and requires no minimum drug quantity.  <u>See</u> Resp. Ex. L, Order at 2.

In response to ground four of Ford's federal petition, Respondents submit that the claim is not cognizable because no federal claim is involved.  Response at 10. Otherwise, Respondents rely on the state postconviction court's facts and rationale in denying this claim.  <u>Id.</u> at 9-10.

The Court agrees with Respondents that ground four is not cognizable in federal court.  See Estelle v. McGuire, 502 U.S. 62, 67-68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state court determinations on state law issues.").  Even if the claim were cognizable, Ford did not fairly present it to the state postconviction court as a federal constitutional claim.  See Resp. Ex. L, Motion for Postconviction Relief at 5-6.  As such, Ford did not exhaust the claim.

Even if the claim were cognizable and exhausted, the facts do not support Ford's claim.  As the state postconviction court explained, Ford misunderstood the statutory subsection under which he was charged and convicted.  No minimum drug quantity applied; likewise, no minimum mandatory sentence applied.  Ford's claim is factually and legally meritless, and it would ultimately fail on that basis.

## VIII. Certificate of Appealability
## Pursuant to 28 U.S.C. § 2253(c)(1)

If Ford seeks issuance of a certificate of appealability, the undersigned opines that a certificate of appealability is not warranted. This Court should issue a certificate of appealability only if the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make this substantial showing, Ford "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)).

Where a district court has rejected a petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's

assessment of the constitutional claims debatable or wrong. See Slack, 529 U.S. at 484. However, when the district court has rejected a claim on procedural grounds, the petitioner must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Id. Upon consideration of the record as a whole, this Court will deny a certificate of appealability.

Therefore, it is now

**ORDERED AND ADJUDGED:**

1.      The Petition (Doc. 1) is **DENIED**, and this action is **DISMISSED WITH PREJUDICE**.

2.      The Clerk of the Court shall enter judgment denying the Petition and dismissing this case with prejudice.

3.      If Ford appeals the denial of the Petition, the Court denies a certificate of appealability. Because this Court has determined that a certificate of appealability is not warranted, the Clerk shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case. Such termination shall serve as a denial of the motion.

4.      The Clerk of the Court is directed to close this case and terminate any

pending motions.

DONE AND ORDERED at Jacksonville, Florida, this 11th day of August, 2016.


MARCIA MORALES HOWARD
United States District Judge


lc22
c:
Nehemiah William Ford, FDOC # 108886
Counsel of Record